# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SMAWLEY, FLEMING, and POND
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant ALEX J. SECORD**
**United States Army, Appellant**

ARMY 20210667

Headquarters, 82nd Airborne Division
G. Brett Batdorff, Military Judge (arraignment)
Travis L. Rogers, Military Judge (trial)
Colonel Jeffrey S. Thurnher, Staff Judge Advocate

For Appellant: Major Mitchell D. Herniak, JA (argued)[1]; Lieutenant Colonel Dale C. McFeatters, JA; Major Mitchell D. Herniak, JA; Captain Sarah H. Bailey, JA (on brief); Lieutenant Colonel Autumn R. Porter, JA; Major Mitchell D. Herniak, JA (on reply brief).

For Appellee: Major Timothy R. Emmons, JA (argued); Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Timothy R. Emmons, JA; Major A. Benjamin Spencer, JA (on brief).

26 June 2024

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Senior Judge:

In this case, we face the unique situation regarding a defense motion to compel discovery when the government possessed appellant's cellphone (the container of the evidence) but the government was unable to access any of the

---

[1] The court heard oral argument on 19 March 2024 at Suffolk University Law School as part of the court's outreach program.

cellphone's data (the alleged relevant evidence requested by defense).[2] Appellant argues the military judge erred by granting, in part, the defense motion to compel the discovery of appellant's cellphone. We find the military judge did not err and, even assuming arguendo an error occurred, appellant was not prejudiced.

## BACKGROUND

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violation of a lawful general regulation and five specifications of wrongful use of a controlled substance in violation of Articles 92 and 112a, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 912a.[3] The military judge sentenced appellant to a bad conduct discharge, confinement for eighty-five days, a reprimand, and reduction to the grade of E-2. The convening authority took no action on the findings and sentence.

Appellant, a Staff Sergeant in the United States Army, met ███, then a junior enlisted soldier, during a deployment to Afghanistan in 2019. Upon redeployment, appellant and ███ were assigned to conduct physical training together and exchanged cellphone numbers. On multiple occasions in August of 2020, appellant and ███ communicated via cellphone regarding appellant bringing cocaine to ███'s off-post apartment. Appellant was convicted of using cocaine on three different occasions while partying at ███'s apartment in August of 2020. ███ and other junior enlisted soldiers, including Specialist (SPC) ███ and SPC ███ testified during the government's case-in-chief as to appellant's cocaine use while partying at ███'s apartment.[4] Appellant also separately tested positive for cocaine use in September of 2020 and March of 2021 after his command directed a urinalysis test.

---

[2] Appellant raised two issues before this Court, but only his motion to compel the discovery of his cellphone merits discussion, however, no issue requires relief. We have given full and fair consideration to the issues personally raised by appellant before this Court pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

[3] Appellant was found not guilty of two specifications of wrongful possession of a controlled substance with intent to distribute, two additional specifications of wrongful use of a controlled substance, and one specification of aggravated assault with a dangerous weapon in violation of Articles 112a and 128, UCMJ.

[4] Witness credibility was a large issue at trial as, not surprisingly, several government witnesses possessed their own legal difficulties based on their misconduct. Common sense dictates a group of soldiers, who all used cocaine together, might individually face either potential administrative or criminal

(continued . . .)

During the investigation into appellant's alleged cocaine distribution and use, Special Agents (SAs) from the U.S. Army Criminal Investigation Division (CID) seized appellant's cellphone pursuant to a search and seizure authorization. Special Agents, however, were unable to extract any data from appellant's cellphone.[5] Despite the government's inability to access any data from appellant's cellphone, defense counsel filed a discovery request with the government for the data from appellant's cellphone. The government denied the defense request. Appellant filed with the military judge a motion to compel discovery of the data on his cellphone. Defense counsel generically asserted, without any specifics, that impeachment text messages allegedly existed on appellant's cellphone between him and the three other soldiers. The government asserted appellant's cellphone was evidence of his criminal activity and allegedly possessed incriminating data as to his attempts to purchase cocaine.

After the filing of multiple briefs and the receipt of several arguments from both parties, the military judge ultimately granted appellant's motion, in part, to inspect his cellphone and attempt to extract the data therein. The military judge's ruling was contingent on appellant voluntarily disclosing his password or personal identification number (PIN) to his digital forensic expert (DFE). The government could not receive appellant's password or PIN from appellant's DFE, but the military judge set a further condition that any inspection or attempt to extract data from appellant's cellphone by his DFE needed to occur at the CID office with the CID DFE present.

---

(. . . continued)
proceedings. ▇ was initially granted testimonial immunity by the appropriate military authority but was administratively separated from the Army prior to appellant's trial. In her new civilian status, ▇ discussed invoking her right against self-incrimination in case she faced a future civilian criminal proceeding, but the military judge denied her request. Specialist ▇ also faced a court-martial but received immunity by the appropriate military authority to testify at appellant's trial. In January of 2021, SPC ▇ agreed to serve as a confidential informant for the military after investigators confronted him with the possibility of deportation to his country of citizenship, Iran, for his drug offenses. Specialist ▇ was also administratively separated from the Army prior to appellant's trial. Appellant's trial defense counsel zealously cross-examined these three government witnesses regarding their misconduct, pending or completed administrative or criminal proceedings, and possible biases or motives to fabricate testimony against appellant.

[5] Special Agents were unable to obtain any data from appellant's cellphone because it was protected by either a password or personal identification number (PIN) and CID's extraction software was not compatible with the cellphone.

The military judge reasoned, "[t]he Government may have physical possession of the [cell]phone . . . but the Defense holds the key to the information within the [cell]phone. The Government is not impeding access to the data within the cellphone, as the Defense has been granted leeway to access the data in conjunction with simultaneous Government access." The military judge asserted he was "exercising [his] discretion to regulate the time, place, and manner of discovery in a way intended to protect lawfully seized evidence of an alleged crime."

Appellant declined to utilize the military judge's partial relief granted in his ruling. Based on appellant's decision, neither appellant nor the government gained access to any data on appellant's seized cellphone.

## LAW AND DISCUSSION

We review a military judge's ruling on a motion to compel discovery for an abuse of discretion. *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *Id.* Reviewing a military judge's decision for an abuse of discretion "call[s] for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (cleaned up). Article 59(a), UCMJ further provides "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

Our superior court has held, "Article 46 [UCMJ] and its implementing rules provide greater statutory discovery rights to an accused than does his constitutional right to due process." *United States v. Coleman*, 72 M.J. 184, 187 (C.A.A.F. 2013) (citing *Roberts*, 59 M.J. at 327). Our superior court "established two categories of disclosure error: (1) cases in which the defense either did not make a discovery request or made only a general request for discovery; and (2) cases in which the defense made a specific request for the undisclosed information." *Id.* (citing *Roberts*, 59 M.J. at 326-27) (cleaned up). "For cases in the first category, we apply the harmless error standard. For cases in the second category, we apply the heightened constitutional harmless beyond a reasonable doubt standard." *Id.* (cleaned up). Nondisclosure of "requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial." *Id.*

Rule for Courts-Martial [R.C.M.] 701(a)(2)(A) provides "the Government shall permit the defense to inspect any . . . data . . . [or] tangible objects . . . if the item is within the possession, custody, or control of military authorities and. . .the item is relevant to defense preparation . . . ." Following a defense request for such

disclosure and upon compliance by the government, R.C.M. 701(b)(3) states the defense, "on request of trial counsel, shall permit trial counsel to inspect and copy . . . data . . . [or] tangible objects . . . if — (A) the item is within the possession, custody, or control of the defense; and (B) the defense intends to use the item in the defense case-in-chief at trial." In addition to the respective discovery obligations of the parties, R.C.M. 701(e) provides "each party shall have . . . equal opportunity to . . . inspect evidence . . . . No party may unreasonably impede the access of another party to . . . evidence."

Rules for Courts-Martial 701(a) and 701(b) appear to contemplate that the data in question is in the current physical "possession, custody, or control" (ie: capable of being immediately reviewed and in a format that it could be presented as an exhibit for identification at trial) of one of the parties at the time of the discovery request by the party not in possession. Contrarily, R.C.M. 701(e), which omits the language "possession, custody, or control," appears to include data that might not yet be in the physical possession of any party, as we defined above, but instead governs the rights of the parties to access so-called "potential" evidence. Rule for Courts-Martial 701(g)(1) permits the military judge to "specify the time, place, and manner of making discovery and may prescribe such terms and conditions as are just."

We find the military judge's ruling to grant, in part, the defense motion to compel discovery of appellant's cellphone, which was seized by the government pursuant to a valid search and seizure authorization issued by a military magistrate, was not an abuse of discretion. The essence of the trial defense counsel's request was two-part: (1) to obtain access to the cellphone (the container of evidence) which was in the government's physical possession; and (2) to extract the cellphone's data (the alleged relevant evidence) which was not in the government's physical possession. *See United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017) (discussing the difference between the physical cellphone and the data contained inside). Trial defense counsel did not request to extract specific files or documents, but instead asked for access to the cellphone to allow appellant's DFE to apparently extract all of the cellphone's data.

Unlike the factual scenarios discussed in cases such as *Roberts*, 59 M.J. 323; *Coleman*, 72 M.J. 184; or even *United States v. Rhea*, 33 M.J. 413 (C.M.A. 1991); the data that defense counsel wanted to extract was not in the physical possession of the government or the defense and could not be obtained by either party at that time. At the time of the motion hearing, the government and defense counsel had equal opportunity, which is to say no opportunity, to extract the data on appellant's cellphone.

In crafting his ruling, the miliary judge reasoned appellant's cellphone contained "likely [data] evidence of a crime" (the underlying linchpin behind the

government's authority to initially seize and continued ability to possess appellant's cellphone as granted by a military magistrate). The military judge weighed the government's interest in not "completely turn[ing] over sole physical possession [to the defense ] . . . that which is evidence of a crime." In denying defense's request for sole access to appellant's cellphone, the military judge ruled he would not outright turn over "what could in other words be contraband to [appellant]."

In this situation, the military judge's proposed solution – providing the defense DFE access to the cellphone, in conjunction with the government DFE, in the event appellant opted to grant such access to his expert – is consistent with the equal opportunity to inspect evidence provided for in R.C.M. 701(e) as balanced with the military judge's inherent authority under R.C.M. 701(g)(1) to oversee the discovery of a tangible object containing "likely evidence" of a crime within the government's possession pursuant to a lawful search and seizure authorization.[6] The military judge's ruling was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.[7] Had appellant opted to grant access to his cellphone, both appellant and the government would then be given equal opportunity to inspect the evidence as it existed at that time. Because appellant decided *not* to provide access, both appellant and the government maintained their equal lack of opportunity to inspect the evidence.[8]

We disagree with appellant's assertion that the military judge's ruling forced appellant to choose between his statutory right to evidence that may assist in his defense and his constitutional right against self-incrimination. The Self-Incrimination Clause of the Fifth Amendment reads, "No person. . .shall be

---

[6] The military judge recognized the defense counsel "conceded" at the motion hearing that appellant's cellphone possessed "likely evidence of a crime."

[7] As the military judge's ruling involved a cellphone containing "likely evidence of a crime" seized pursuant to authorization from a magistrate, our decision is narrowly tailored to the unique facts of this case and does not stand as precedent to any future application of R.C.M. 701(e) or the military judge's authority under R.C.M. 701(g)(1) regarding any other types of evidence.

[8] Because neither party possessed the evidence at issue here – i.e., the data of the cellphone – we also view this evidence as outside the scope of the defense's disclosure requirements under R.C.M. 701(b). Thus, the military judge's ruling did not require appellant to disclose more than the rule requires, rather appellant was under no obligation to disclose anything. We draw an analogy to a safe or lockbox in the government's possession, to which only appellant has the key. Should appellant decide to unlock the safe, both he and the government could then come into possession of the contents at the same time; being the government's possession pursuant to a valid search authorization.

compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held, "the privilege protects a person only against being incriminated by his own compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409 (1976).

The military judge's order did not *compel* appellant to provide testimonial communications to the government. Quite the opposite: appellant was given an opportunity to *choose* to disclose his password or PIN to his DFE to gain access to otherwise inaccessible discovery *he* requested. Appellant's DFE would then use appellant's password or PIN to open appellant's cellphone without disclosing that information to the government. Appellant was free to not pursue, as he did, the course of action offered by the military judge. Despite appellant's argument to the contrary, this is not a case of a government actor asking or ordering appellant to involuntarily provide his password or PIN to the government. *See* e.g. *Mitchell*, 76 M.J. 413.

Even assuming arguendo that the military judge's ruling was an abuse of his discretion, appellant must still demonstrate prejudice. UCMJ art. 59(a). Appellant cannot point to any evidence or testimony presented at trial establishing impeachment or defense relevant data existed on his cellphone – an item the contents of which appellant was arguably in the best position to know. At the motion hearing, the defense bore the burden to establish by a preponderance of the evidence that the evidence they sought existed on the cellphone.[9] Other than the trial defense counsel's mere and barely perceptible argument – which is not evidence – alleging a generic incantation that impeachment evidence existed on the cellphone regarding the three soldier witnesses, the defense did not offer, and after our complete review of the record we did not find, any actual evidence or testimony that any specific impeachment text messages or other data existed on appellant's cellphone that would constitute an "item...relevant to defense preparation."[10]

In this void, we are left to wonder as to any particulars of the alleged impeachment evidence defense sought on appellant's cellphone and whether it even

---

[9] *See* Rule for Courts-Martial 905(c)(1)-(2) (outlining the burden of proof to decide "any factual issue the resolution of which is necessary to decide a motion shall be on the moving party" by "a preponderance of the evidence"). Although not determinative to our analysis, the military judge could have ruled appellant failed to meet his burden to establish beyond a preponderance of the evidence the facts necessary to support his motion and denied the defense motion to compel in its entirety.

[10] Now before us, appellate defense counsel reasserts the trial defense counsel argument by generically alleging some impeachment evidence regarding the three soldier witnesses existed on appellant's cellphone. Again, argument of counsel does not evidence make.

existed. Appellant's failure to adequately address two of the most fundamental discovery questions (the exact nature of the evidence sought and that such evidence existed on his cellphone) aids our analysis that no prejudice occurred in his case. Even if we apply the most defense favorable appellate standard of review of harmlessness beyond a reasonable doubt, having no evidence or testimony before us that any impeachment or defense relevant evidence existed on appellant's cellphone, we determine, even if the military judge possibly erred regarding defense's discovery motion, his ruling was neither prejudicial nor possessed, in this situation, the ability that it "might have affected the outcome of the trial." *See Coleman*, 72 M.J. at 187.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Chief Judge SMAWLEY and Judge POND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court