# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

FLEMING, PENLAND, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class DAVY J. HALCHIMAI**
**United States Army, Appellant**

ARMY 20220429

Headquarters, 1st Armored Division and Fort Bliss
Robert L. Shuck and Joseph R. Distaso, Military Judges
Colonel Andrew D. Flor, Staff Judge Advocate

For Appellant: Captain Jessica A. Adler, JA (argued); Colonel Philip M. Staten, JA; Major Robert W. Rodriguez, JA; Jonathan F. Potter, Esquire (on brief).

For Appellee: Major Anthony J. Scarpati, JA (argued); Colonel Richard E. Gorini, JA; Major Justin L. Talley, JA; Captain Stewart A. Miller, JA (on brief).

30 June 2025

------------------------------------
SUMMARY DISPOSITION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Senior Judge:

The military judge did not abuse his discretion denying a defense motion to dismiss that asserted a failure by the government to disclose an alleged agreement with the victim that could have adversely affected her credibility.

An enlisted panel convicted appellant, contrary to his pleas, of one specification of communicating a threat, one specification of assault, and one specification of sexual assault in violation of Articles 115, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 915, 920, 928 (2019) [UCMJ].[1] The military judge sentenced appellant to a dishonorable discharge, confinement for five years,

------------------------------------

[1] The panel found appellant not guilty of one specification of communicating a threat, one specification of rape, and one specification of aggravated assault in violation of Articles 115, 120, and 128, UCMJ.

and reduction to the grade of E-1. Appellant raises three assignments of error, one of which merits discussion but no relief.[2]

## BACKGROUND

After a lengthy field exercise, appellant returned home on a Saturday to his wife of nine years and their four-year-old daughter. Early Sunday morning, appellant and his wife engaged in consensual intercourse. At some point, the appellant turned on pornography and demanded his wife to watch. After she refused, he physically forced her to watch pornography by holding her eyes open. He placed her in a chokehold, while penetrating her anus with his penis, without her consent. During the assault, appellant told his wife, "[a]s long as we are together and married, I will rape you whenever I want." After the sexual assault ended, the couple fell asleep.

Upon awaking, the couple engaged in Easter Sunday activities with their young daughter. After their daughter went to bed that evening, the victim asked her husband to become a "new man." She thought he agreed. Later in the evening, appellant and his wife again engaged in consensual vaginal intercourse. After some time, however, appellant flipped her onto her stomach and penetrated her anus with his penis over her objections, stating, "You know what? Just one more rape."

On Monday, the victim outcried to her neighbor regarding her husband's assaults and, shortly thereafter, reported to law enforcement and completed a sexual assault forensic examination. As the investigation progressed, the victim indicated she no longer wished to participate in the process or for her husband to face court-martial proceedings. Government counsel provided notice to the defense counsel regarding the victim's position.

Government counsel met with the victim on numerous occasions. After one of these meetings, held shortly before a docketed motion hearing, defense counsel submitted a discovery request seeking the government counsel's notes from the victim meetings. Government counsel refused, asserting the notes were protected attorney work product and did not contain any otherwise discoverable material. The military judge denied a defense motion to compel the government counsel's notes.

Ultimately, the victim testified at the docketed motion hearing consistently with her prior statements (that her husband anally raped her) made to her neighbor, law enforcement, and medical personnel. After the motion hearing, the government added the victim to their witness list for the contested trial.

---

[2] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they merit neither discussion nor relief.

Following the government's act of amending their witness list, the defense filed a motion to dismiss the charges because of an alleged discovery violation. Defense asserted the government had failed to disclose an alleged agreement between the government and the victim wherein the victim agreed to testify at the motion hearing in exchange for her not being called at the contested trial. Accompanying the defense motion was a memorandum from the victim's second Special Victims' Counsel (SVC), which appeared to support the defense counsel's assertion regarding the existence of an agreement. The SVC's memorandum claimed a verbal agreement existed between the government and the victim as "[s]he was told that if she testified at the 39a, she would not have to testify at the trial."

The first SVC signed a memorandum, admitted at the second motions hearing, discussing two telephone calls with the government counsel regarding whether the victim would testify at the motion hearing or the contested trial. The memorandum asserted government counsel told the first SVC that "if they subpoenaed [the victim] for the 39A hearing, and she testified at that hearing, the government would not call her to testify at the trial itself." Beyond this memorandum, the first SVC testified at the hearing on the defense motion to dismiss. The first SVC conceded that government counsel had never promised "under all circumstances to not call [the victim] as a witness," nor was any written agreement ever struck. The SVC acknowledged the decision whether the victim testified was ultimately a strategic one made by the government, and at the time the conversation had occurred, the government was only intending to call the victim at the motion hearing (versus contested trial).

The military judge ultimately denied appellant's requested relief, finding "there was no agreement between the government and the [victim] that if she testified at the [motion] hearing she would not receive a subpoena for trial," and therefore no discovery violation. The military judge acknowledged, "[t]he defense was aware from the outset that the [victim] did not desire prosecution of the accused. [And she] made her preference known repeatedly throughout the proceedings that she did not desire prosecution." The military judge further reasoned, even if his ruling was incorrect (and a discovery violation had occurred), any potential "violation was cured as soon as the defense learned of the discussion [between the victim and government]" as defense could inquire at the contested trial "what effect, if any, the government's discussions with [the victim] impacted her testimony either at the [motion] hearing or at trial. As such . . . [appellant] ha[d] not suffered any prejudice."

At trial, defense counsel asked the victim during cross-examination if she had "any conversations with the government before testifying at th[e] motion[] hearing." The victim testified she did not remember. After her response, defense counsel stated, "[o]kay. I can move on" and nothing further was presented by the defense, in any form, regarding any alleged agreement between the government and the victim.

## LAW AND DISCUSSION

"Our review of a military judge's discovery rulings is for an abuse of discretion." *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015) (internal citations omitted).

> The abuse of discretion standard calls for more than a mere difference of opinion. Instead, an abuse of discretion occurs when the military judge's findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.

*Id.* (internal quotations, citations, and alterations omitted).

"[T]he trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence," via the discovery process. UCMJ art. 46(a). "Discovery in the military justice system . . . is designed to eliminate pretrial gamesmanship, reduce the amount of pretrial motions practice, and reduce the potential for surprise and delay at trial." *United States v. Jackson*, 59 M.J. 330, 333 (C.A.A.F. 2004) (internal quotations and citations omitted). To this end, "[t]rial counsel shall . . . disclose to the defense the existence of evidence known to trial counsel which reasonably tends to . . . [a]dversely affect the credibility of any prosecution witness or evidence." Rule for Courts-Martial [R.C.M.] 701(a)(6)(D). This includes offers of leniency in a witnesses' own prosecution, *Giglio v. United States*, 405 U.S. 150, 152-55 (1972), and other recommendations of clemency or agreements between a witness and the government. *United States v. Coleman*, 72 M.J. 184, 185-89 (C.A.A.F. 2013).

"Our review of discovery/disclosure issues utilizes a two-step analysis: first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial." *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004).

We conclude the military judge "was well within the bounds of reasonable judicial discretion" in finding no discoverable agreement had been reached between the victim and the government. *United States v. Nguyen*, 2025 CCA LEXIS 112, at *3 (Army Ct. Crim. App. 12 Mar. 2025) (sum. disp.). As an initial matter, the basis of any purported agreement—that the victim did not wish to testify against appellant—was known by defense even prior to referral. Furthermore, additional information elicited during the first SVC's testimony at the motion hearing painted a fuller picture than that offered by his memorandum for record. The military judge

was free to give more weight to the sworn testimony admitted before him, which not only offered additional information, but additional context.

Even assuming *arguendo* the military judge erred by determining an agreement did not exist, we find his alternative ruling — that any potential violation was remedied by disclosure prior to trial — adeptly mooted the issue.[3] In short, defense had access to the pertinent information regarding communications between the government and the victim. Although defense counsel only briefly addressed the issue with the victim during the contested trial, the opportunity existed to fully explore any alleged impact on her credibility. How defense chose (or declined) to use such information was a matter of strategy, not discovery.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Judge PENLAND and Judge COOPER concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court

---

[3] Even if the defense had been able to establish an agreement existed, we are not certain as to the probative value, if any, it may have possessed to "reasonably tend[] to" establish an "[a]dverse[] affect" on the victim's "credibility" (the language from R.C.M. 701(a)(6)(D) defense asserts as a basis to mandate government disclosure). Stated more simply; even if an agreement existed, we are not certain its disclosure was required in this case because the defense was already well-aware of the victim's desire to not participate in her husband's proceeding (the essence of the issue adversely affecting her credibility).