# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Master Sergeant RICARDO L. GRACIA**
**United States Army, Appellant**

ARMY 20170171

Headquarters, 8th Theater Sustainment Command
Mark Bridges and James Arguelles, Military Judges
Lieutenant Colonel Ryan B. Dowdy, Staff Judge Advocate

For Appellant: Captain Benjamin A. Accinelli, JA; Margaret V. Kurz, Esquire; Joseph M. Owens, Esquire (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Marc B. Sawyer, JA; Lieutenant Colonel Karen J. Borgerding, JA (on brief).

18 November 2019

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Judge:

Appellant was a Master Sergeant (MSG) when he engaged in various sexual activities with his then fifteen-year-old biological daughter, SG.[1] Appellant now raises five assignments of error, three of which we will discuss, none of which merit

---

[1] An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of rape of a child, four specifications of sexual abuse of a child, and one specification of incest as a violation of Hawaii state law under the Assimilative Crimes Act, in violation of Articles 120b and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920b and 934 [UCMJ]. The panel sentenced appellant to a dishonorable discharge and confinement for twenty years. The convening authority approved the sentence as adjudged and waived automatic forfeitures of all pay and allowances for a period of six months and ordered them paid to appellant's spouse.

relief.[2] We will address appellant's following assigned errors: (1) whether appellant invoked his Fifth Amendment right to silence to law enforcement during his interview and whether the military judge erred in denying appellant's suppression motion; (2) whether appellant's due process rights were violated when the government failed to provide the defense with paralegal notes from a pretrial interview with the victim; and (3) whether the evidence is legally and factually insufficient to sustain convictions for rape by force.

Additionally, we will discuss Specifications 1 and 6 of Charge II; in that after conducting our review of the record, some of the charged language in those specifications is not supported by the evidence.[3] Accordingly, we will except that language from those specifications in our decretal paragraph.

## BACKGROUND

Appellant and his fifteen-year-old daughter, SG, were always affectionate toward each other. They cuddled, kissed each other on the mouth, and walked holding hands. On the night of 17 June 2016, appellant's wife and older daughter retreated upstairs; meanwhile, appellant drank half a bottle of rum and SG consumed half a beer and tasted rum while sitting on the porch. As they talked, SG was sitting on appellant's lap and their conversation became sexual in nature.

As they moved inside the house, appellant and SG laid on the couch together. Appellant began to rub SG's thigh, inner thigh, and then her groin area through her clothing. At some point, SG changed into pajamas. SG testified that she was scared and did not want to say anything that would get her in trouble. Appellant then proceeded to unzip SG's pajamas and began rubbing her clitoris and digitally penetrated her vagina. After partially removing SG's pajamas, appellant performed oral sex on her, penetrating her vagina with his tongue. Appellant also had SG perform oral sex on him. Finally, appellant attempted to insert his penis into SG's vagina, and then inserted his penis in her anus. At some point during this encounter, appellant had them position their bodies so they could perform oral sex on each

---

[2] We have given full and fair consideration to matters raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

[3] We note that The Specification of Charge I, and Specifications 2 and 5 of Charge II were dismissed after arraignment, but prior to pleas. The promulgating order does not reflect that appellant was arraigned on these specifications, nor that they were dismissed. Accordingly, the Clerk of Court has issued a corrected promulgating order. In this opinion, we will refer to the charges and specifications as appellant was arraigned on them.

other at the same time. Afterward, appellant and SG made a "pinky promise" not to tell anyone what had happened.

On Father's Day, 19 June 2016, appellant raped his daughter, again. While they were alone in the house, appellant performed oral sex on SG, had her place his penis in her mouth, and inserted his penis into her vagina.

On 20 June 2016, appellant came home from work for lunch. While home he and SG laid on the bed where he rubbed her buttocks and her vaginal opening through her clothing.

On 24 June 2016, appellant brought SG lunch while she was working at her summer job. As they sat in the car, appellant inserted his fingers into SG's vagina. Later that evening while in the garage, appellant again inserted his fingers into SG's vagina before pulling down his shorts and telling her to perform oral sex on him. Before SG went to bed that night, appellant kissed her "inappropriately" by putting his tongue in her mouth and groping her breasts. SG woke up in the middle of the night after having a nightmare. When appellant came to her room to help her, she demanded that he get out of her room. Her mother then entered the room and SG told her that appellant had been molesting her.

The next morning, appellant was confronted by SG and his wife about the allegations. Appellant admitted he had in fact engaged in sexual activities with SG. The Army Criminal Investigation Command (CID) investigated these allegations. Appellant told CID that he admitted to the allegations to his wife because that is what his wife wanted to hear and SG was so convinced that that he had in fact done these things.

During appellant's CID interview, appellant ultimately admitted that the events SG described on 17 June 2016 did occur; however, he maintained that SG was the instigator, and he was so intoxicated that he was unable to rebuff SG's advances. Though appellant denies anything else sexually occurred between him and SG, he confirmed that he was in fact alone with SG at the specific times and places the other sexual assaults occurred.

## LAW AND DISCUSSION

### A. Whether Appellant Invoked his Fifth Amendment Right

Pretrial, the defense submitted a motion to suppress appellant's statement to CID on the basis that the CID agent continued to question appellant despite him saying, "Stop." Appellant argues this was an unambiguous invocation of his Fifth Amendment right to remain silent and the military judge erred in denying the defense motion to suppress his CID statement. We disagree.

We review a military judge's ruling on a motion to suppress for an abuse of discretion, "viewing the evidence in the light most favorable to the prevailing party." *United States v. Eugene*, 78 M.J. 132, 134 (C.A.A.F. 2018) (citing *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016)). "In reviewing a military judge's ruling on a motion to suppress, we review factfinding under the clearly erroneous standard and conclusions of law under the de novo standard." *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011) (quoting *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)).

"While no particular words or actions are required to exercise one's Fifth Amendment right to silence . . . its invocation must be unequivocal before all questioning must stop." *United States v. Sager*, 36 M.J. 137, 145 (C.M.A. 1992). To assess whether an appellant's invocation of rights is unambiguous, we must determine whether the invocation was "sufficiently clear that a reasonable [law enforcement official] in the circumstances would understand the statement" to be an assertion of the right to remain silent. *United States v. Delarosa*, 67 M.J. 318, 324 (C.A.A.F. 2009) (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)).

After reviewing appellant's CID videotaped interview, we agree with the military judge's finding that appellant did not unambiguously invoke his Fifth Amendment right to remain silent. The moment appellant claims he invoked his right to remain silent occurs approximately two and a half hours into the interview. By this point, appellant had already made some admissions and was emotional. The CID agent told appellant he was "not a bad dad." Appellant cried when he heard that, covered his face, and mumbled through the sobs a faint sounding "Stop." In this context, appellant saying "Stop," is him asking for a moment to collect his emotions. There was an approximate thirteen second pause, and then the CID agent asked appellant to tell him what happened. Appellant proceeded to admit to raping his daughter.

Based upon our review of appellant's CID interview, we hold the military judge did not abuse his discretion in denying the defense motion to suppress. As the military judge stated in his ruling, appellant's statement is "an ambiguous statement at best." Accordingly, the CID agent had no obligation to stop questioning appellant. *See Davis*, 512 U.S. at 461-62.

### B. Whether Appellant's Due Process Rights Were Violated Due to Non-Disclosure of Government Paralegal Notes

After trial, appellant was served with the record of trial, which included paralegal notes from a pretrial government interview with SG. These notes were not previously provided to the defense. The defense requested, and the convening authority granted, a post-trial Article 39(a) session regarding whether the failure to disclose these notes to the defense violated R.C.M. 701 and *Brady v. Maryland*, 373

U.S. 83 (1963). The paralegal notes contain five statements at issue: (1) "when we moved here something evil [was] in the house and Dad let it get to him;" (2) "in New York we had a[n] old Soldier in our house;" (3) "[In] Texas there was a ghost trying to kill me;" (4) "Here in Hawaii there's something evil trying to tear us apart;" and (5) "Something changed in Dad between Drum and here."

At the post-trial Article 39(a) session, the defense moved for a mistrial under R.C.M. 915 and 1102(b) based on the failure of the government to provide the above statements pretrial. Appellant contended at the post-trial Article 39(a) session, and continues to argue on appeal, that the failure to disclose these notes materially prejudiced his defense because the statements at issue would have undermined SG's credibility at trial and would have provided additional evidence to support the defense's Military Rule of Evidence [Mil. R. Evid.] 513 motion for disclosure of SG's mental health records. The military judge ruled that he was "convinced beyond a reasonable doubt that even if the statements at issue were disclosed and/or admitted into evidence at trial, the panel would still have returned all of the same guilty verdicts."

We review a military judge's decision to deny a request for a mistrial for abuse of discretion. *United States v. Harris*, 51 M.J. 191, 196 (C.A.A.F. 1999) (citing *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990); *United States v. Jeanbaptiste*, 5 M.J. 374, 376 (C.M.A. 1978)). "Declaring a mistrial is a drastic remedy which should be used only when necessary to prevent a miscarriage of justice." *Id.*

### 1. Brady

The government violates an accused's due process rights if it withholds evidence that is favorable to the defense and material to the accused's guilt or punishment. *United States v. Behenna*, 71 M.J. 228, 237-38 (C.A.A.F. 2012). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* at 238 (citing *Smith v. Cain*, 565 U.S. 73, 75 (2012)). "[T]he evidence must have made the likelihood of a different result great enough to undermine confidence in the outcome of the trial." *Id.*

Without deciding whether the statements at issue amount to *Brady* evidence, we determine that had the statements at issue been disclosed, there is *not* a reasonable probability that the result of appellant's trial would have been different. *See, e.g., United States v. Jones*, 49 M.J. 85, 89-90 (C.A.A.F. 1998) (limiting the cross-examination of a victim was harmless beyond a reasonable doubt where the government's case was strong, and the defense was allowed to introduce other evidence concerning the victim's ability to perceive). At trial, defense elicited extensive testimony regarding SG's false memories, lack of credibility, and other

emotional and psychological issues. Additional cross-examination of SG regarding the statements at issue would have been cumulative. *See Behenna*, 71 M.J. at 238 ("The overlapping nature of the evidence undercuts an argument that failure to disclose pursuant to *Brady* was prejudicial."). Accordingly, we find the paralegal notes were not material, and their non-disclosure does not undermine the confidence in appellant's convictions.

### 2. *Rule for Courts-Martial 701*

Rule for Courts-Martial 701(a)(2) requires the government, upon defense request, to produce documents "which are material to the preparation of the defense." *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004). Regardless of a defense request, R.C.M. 701(a)(6) requires the Government to disclose evidence that "reasonably tends" to negate the guilt of an offense charged. *Id.* Under R.C.M. 701, information "material to the preparation of the defense" includes information that could be used at trial to impeach a witness. *United States v. Roberts*, 59 M.J. 323, 326-27 (C.A.A.F. 2004).

The Court of Appeals for the Armed Forces (CAAF) has adopted two appellate tests for determining materiality with respect to the erroneous nondisclosure of discoverable evidence under R.C.M. 701. *See United States v. Hart*, 29 M.J. 407, 410 (C.M.A. 1990). In cases where the defense did not make a discovery request or only made a general request for discovery, an appellant is entitled to relief only by showing there is a "reasonable probability" of a different result at trial if the evidence had been disclosed. *Id.* "Where an appellant demonstrates that the Government failed to disclose discoverable evidence in response to a specific request . . . the appellant will be entitled to relief unless the Government can show that nondisclosure was harmless beyond a reasonable doubt." *Id.*

In appellant's case, the defense submitted a specific discovery request which asked for "the content of any interviews conducted by the detailed trial counsel, particularly if these interviews resulted in disclosure of statements not previously provided to the Defense," and "any information of any prior and/or subsequent propensity on the part of any witness and/or alleged victim to lie or state falsehoods." Since the defense specifically requested the statements at issue, we require the government to show harmlessness beyond a reasonable doubt. For the same reasons we find appellant was not prejudiced by the government's nondisclosure of the statements at issue under *Brady*, we determine that the

nondisclosure under R.C.M. 701 (a)(2) was harmless beyond a reasonable doubt. *See Roberts*, 59 M.J. at 327.[4]

### 3. *Mil. R. Evid. 513*

Appellant further claims the statements at issue might have convinced the military judge to grant the defense motion for an in-camera review of SG's mental health records. The military judge ruled that he still would have denied the defense motion. Specifically, the military judge ruled, "consideration of the statements at issue does not in any way change the conclusion that the defense failed to meet its obligation under [Mil. R. Evid. 513(e)(3)] to establish that its request fell within one of the exceptions enumerated in [Mil. R. Evid.] 513(d)." We similarly fail to see how the statements at issue establish that SG's mental health records are not privileged under Mil. R Evid. 513(d) or that appellant met one of the exceptions under Mil. R. Evid. 513(e)(3) for an in-camera review. Without deciding whether the military judge abused his discretion in denying the defense request for an in-camera review under Mil. R. Evid. 513, we are convinced beyond a reasonable doubt that had the statements at issue been disclosed, the result of the proceeding would not have been different. *See Roberts*, 59 M.J. at 327.

### C. *Legal and Factual Sufficiency to Sustain Convictions for Rape by Force*

Appellant asserts the evidence is legally and factually insufficient to sustain convictions for rape by force in Specifications 1, 3, and 9 of Charge II. We disagree.

Article 66, UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). We may affirm only those findings of guilt that we find correct in law and fact and determine, based on the entire record, should be approved. *Id.*

In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To affirm a conviction, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "The test for legal sufficiency is whether,

---

[4] Finding no prejudice, we need not decide whether the military judge abused his discretion in denying the defense's request for a mistrial under R.C.M. 701(a)(2). We also considered whether appellant was prejudiced under R.C.M. 701(a)(6). We determined he was not.

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (citation omitted).

In each of the specifications of rape (Specifications 1, 3, and 9 of Charge II), appellant is convicted of a penetrative sexual act with SG, a child who had not attained the age of sixteen years, by force; "to wit: abusing his parental authority." Under the definitions section of Article 120b, UCMJ, there is a specific reference to force in the context of a parent-child relationship. "In the case of a parent-child or similar relationship, the use or abuse of parental or similar authority is sufficient to constitute the use of force." UCMJ art. 120b(h)(2).

The record establishes that appellant, by his own admission, engaged in sexual acts with his biological daughter when she was fifteen years old. SG testified in detail about each sexual act. When SG testified about the first time appellant raped her, she stated "I didn't know what to think. I was scared and I didn't want to say anything that would get me in trouble. I don't know why I thought I would get in trouble, but I just - - yeah." Appellant also exerted parental moral pressure on SG when he made her "pinky promise" not to tell anyone what had happened. This "pinky promise" loomed over all future sexual contact between appellant and SG. This abuse of parental authority is precisely the type of psychological force that the plain language of the statute states "*is* sufficient to constitute the use of force."[5] *Id.* (emphasis added). Based on this evidence, we are convinced beyond a reasonable doubt that appellant's parental relationship with SG is sufficient to constitute the use of force under Article 120b, UCMJ.

### D. *Factual Insufficiency in Specifications 1 and 6 of Charge II*

Although not raised by appellant, under Article 66, UCMJ, we notice certain language contained in Specifications 1 and 6 of Charge II as not supported by the evidence.

Regarding Specification 1 of Charge II, appellant is convicted of committing sexual acts upon SG, on 17 June 2016, by penetrating her vulva with his tongue, fingers, and penis; penetrating her anus with his penis; and penetrating her mouth with his penis. SG was very clear in her description about events occurring on 17 June 2016. She testified, "[Appellant] began rubbing my clitoris and putting his fingers in my vagina." Next, SG stated "[Appellant pulled down my onesie the rest

---

[5] Under the specific circumstances of this case, we find appellant having sex with his biological, fifteen-year-old daughter, a per se abuse of parental authority constituting force under Article 120b(h)(2).

of the way and it came off completely . . . [a]nd he began to perform oral sex on me." SG continued to testify that "[Appellant] had me perform oral sex on him." SG testified that "[Appellant] attempted to insert his penis in my vagina and when that didn't work he inserted it into my anus."

In appellant's CID interview, he acknowledges that he was "inside of SG," but does not offer any further details other than he used his tongue on her "coochie" for "oral sex;" and she was on top of him and she performed "oral sex on him." No further testimony was presented about SG's vulva being penetrated by appellant's penis. Therefore, we are unable to conclude beyond a reasonable doubt that appellant did in fact penetrate SG's vulva with his penis on 17 June 2016.

In regards to Specification 6 of Charge I, appellant is convicted of having committed a lewd act upon SG, on 20 June 2016, by touching her buttocks with his hand; touching her genitals with his hand; and exposing his penis. SG testified that appellant was home from work and was wearing his ACU's. As she lay next to him, "[Appellant] started to rub my butt and my vaginal opening through my dress and underwear," and then "he got up as he stood at the edge of the bed and gestured to his groin area, I guess because he has an erection." The record is void of evidence that appellant exposed his penis on 20 June 2016.

The record leaves us with a fair and rational hypothesis other than guilt for appellant penetrating SG's vulva with his penis on 17 June 2016 and exposing his penis on 20 June 2016. *United States v. Billings*, 58 M.J. 861, 869 (Army Ct. Crim. App. 2003); *see also* Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 8-3-11 (10 Sep. 2014). We may only affirm convictions that we are ourselves convinced have been proven beyond a reasonable doubt. We are not so convinced in this case.

## CONCLUSION

We affirm only so much of the finding of guilty of Specification 1 of Charge II as finds that:

> [Appellant], did, on the island of Oahu, Hawaii, on or about 17 June 2016, commit sexual acts upon SG, a child who had not attained the age of 16 years, to wit: penetrating her vulva with his tongue and fingers; penetrating her anus with his penis; and penetrating her mouth with his penis; by using force against her; to wit: abusing his parental authority.

We affirm only so much of the finding of guilty of Specification 6 of Charge II as finds that:

> [Appellant], did, on the island of Oahu, Hawaii, on or about 20 June 2016, commit lewd acts upon SG, a child who had not attained the age of 16 years, to wit: touching her buttocks with his hand and touching her genitals with his hand.

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principals of *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), this court AFFIRMS the sentence. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his findings being set aside by this decision are ordered restored. *See* UCMJ art. 58b(c) and 75(a).

Judge RODRIGUEZ and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Master Sergeant RICARDO L. GRACIA**
**United States Army, Appellant**

ARMY 20170171

---
NOTICE OF COURT-MARTIAL ORDER CORRECTION
---

IT IS ORDERED THAT, to reflect the true proceedings at the trial of the above-captioned case,

GENERAL COURT-MARTIAL ORDER NUMBER 4, HEADQUARTERS, 8TH THEATER SUSTAINMENT COMMAND, FORT SHAFTER, HAWAII 96858, dated 30 April 2018,

IS CORRECTED AS FOLLOWS:

BY adding the following after the jurisdictional paragraph:

"Charge I. Article 92. Plea: None. Finding: Dismissed.

The Specification: In that Master Sergeant Ricardo L. Gracia, U.S. Army, having knowledge of a lawful order issued by Major General Raymond Mason, to wit: paragraph 4p(2), Policy Memorandum Installation-1, Discipline, Law, and Order, dated 15 July 2009, an order which it was his duty to obey, did, on the island of Oahu, Hawaii, on or about 17 June 2016, fail to obey the same by providing alcohol to his 15-year-old daughter, SG. Plea: None. Finding: Dismissed after arraignment but prior to pleas."

BY reflecting Charge I. Article 120b as Charge II. Article 120b.

BY adding the following Specification, after Specification 1, renumbered Charge II:

"Specification 2: In that Master Sergeant Ricardo L. Gracia, U.S. Army, did, on the island of Oahu, Hawaii, on or about 17 June 2016, commit a lewd act upon SG, a child who had not attained the age of 16 years, to wit, touching her genitals with his hand. Plea: None. Finding: Dismissed after arraignment but prior to pleas."

BY reflecting Specification 2, renumbered Charge II as Specification 3.

BY reflecting Specification 3, renumbered Charge II as Specification 4.

BY adding the following Specification after renumbered Specification 4, renumbered Charge II:

"Specification 5: In that Master Sergeant Ricardo L. Gracia, U.S. Army, did, on the island of Oahu, Hawaii, on or about 19 June 2016, commit a lewd act upon SG, a child who had not attained the age of 16 years, to wit: stating 'do you want a taste' or words to that effect. Plea: None. Finding: Dismissed after arraignment but prior to pleas."

BY reflecting Specification 4, renumbered Charge II as Specification 6.

BY reflecting Specification 5, renumbered Charge II as Specification 7.

BY reflecting Specification 6, renumbered Charge II as Specification 8.

BY reflecting Specification 7, renumbered Charge II as Specification 9.

BY reflecting Specification 8, renumbered Charge II as Specification 10.

BY reflecting Specification 9, renumbered Charge II as Specification 11.

BY reflecting Charge II. Article 134 as Charge III. Article 134.

GRACIA—ARMY 20170171

DATE: 18 November 2019

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

3