# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, WILLIAMS, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist KONNER L. RUHRUP**
**United States Army, Appellant**

ARMY 20230282

Headquarters, Fort Carson
Jacqueline L. Emanuel, Military Judge
Colonel Pia W. Rogers, Staff Judge Advocate

For Appellant: Major Bryan A. Osterhage, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Captain Vy T. Nguyen, JA (on brief).

15 January 2026

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WILLIAMS, Judge:

Appellant physically and sexually abused two successive romantic partners, both of whom had mental health diagnoses. During pretrial proceedings appellant's defense counsel requested expert assistance in the field of psychology, though the nature of the assistance—consultant or witness—was ambiguous. The military judge ultimately denied defense counsel's request. Appellant now raises two assignments of error, one of which, whether the military judge abused her discretion when she denied production of an expert witness, warrants discussion but no relief.[1]

---

[1] We have fully and fairly considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and determine them to be without merit.

An enlisted panel convicted appellant, contrary to his pleas, of two specifications of sexual assault,[2] one specification of rape, one specification of aggravated assault, and six specifications of domestic violence, in violation of Articles 120, 128, and 128b, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928, 928b [UCMJ]. The panel found appellant not guilty of one specification of sexual assault, two specifications of domestic violence, and one specification of animal abuse, in violation of Articles 120, 128b, and 134, UCMJ. The military judge sentenced appellant to a dishonorable discharge, confinement for 10 years and 11 months, and reduction to the grade of E-1.[3]

## BACKGROUND

### A. The Victims

AV1 and appellant had a violent relationship. Appellant physically assaulted AV1 repeatedly, before and during their marriage. On one occasion, he anally raped AV1 and slammed her forehead into the headboard of the bed. On a different occasion, appellant sexually assaulted AV1 anally. The relationship reached a breaking point after appellant strangled AV1 until she lost consciousness. When AV1 regained consciousness, she witnessed appellant standing over her laughing. After appellant strangled her, AV1 left appellant and moved out of the apartment. Ultimately, they divorced.

Appellant met AV2 through a dating application. Appellant quickly developed a relationship with AV2, and AV2 moved into appellant's apartment. Soon after moving in, appellant began to physically abuse AV2. One time, appellant pushed AV2 into a dresser and then kicked her in the torso after she fell to the ground. On three separate occasions, appellant again kicked AV2 in the torso, suffocated AV2 with a pillow, and strangled AV2 until she lost consciousness. During the strangulation incident, appellant cried and stated he thought he had killed AV2.

Both AV1 and AV2 confronted appellant via phone in May of 2021. AV1 recorded a phone conversation in which appellant made several incriminating statements. When AV1 confronted him with "no means f****** no Konner . . . ." appellant replied, "I'm sorry okay" and "I feel like a piece of s*** . . . ." Appellant later said, "[m]ost guys that beat people . . . [t]hey don't care. But, my problem was

---

[2] The government moved to dismiss one specification of sexual assault as multiplicious with appellant's conviction for rape.

[3] Block 12 of the Statement of Trial Results erroneously reflects the total adjudged sentence to confinement as "11 years and 10 months". We correct said error. The Judgment of the Court is also modified to reflect "05/19/2023" as the date the Statement of Trial Results was signed.

that I did care." When AV1 asked what she did to warrant being beaten, appellant replied, "this is going to sound real s*****, but please get over it."

AV2 confronted appellant during a phone conversation monitored by Army Criminal Investigation Division special agents. During the conversation, appellant admitted to strangling her until she lost consciousness. Both special agents who observed the call testified at trial. When AV2 asked if appellant would hurt her again, appellant said words to the effect of, "I will never choke you out if I do not have to," "I will not choke you again, if you do not give me a reason to," and "I got mad, I choked you, you seized, I put you on the bed, and then I cried over you until you woke up."

### B. Defense Expert "Consultant" and Discovery Requests

Both AV1 and AV2 were diagnosed with bipolar disorder, anxiety, and depression. Consequently, defense counsel requested the convening authority approve a request for an expert consultant. The convening authority denied the request.

After referral, defense counsel filed a "Motion to Compel Expert *Witness* Production" and asked the court to order the "[g]overnment to employ Dr. [█] as an expert *consultant* [for] the defense team in forensic psychiatry." (emphasis added). Defense counsel wanted to use Dr. █ to "explor[e] . . . issues . . . in developing its theory of the case." At no point in their motion did defense counsel discuss Dr. █ testifying as an expert witness, nor did defense counsel cite the applicable legal standards for production of an expert witness.

In addition to the request for an expert consultant, defense counsel sought production of AV1's and AV2's mental health records. Defense counsel's request was not limited to diagnoses, treatment records, and prescriptions.[4] Defense counsel requested all records to include privileged communications between AV1 and AV2 and their respective mental health providers.

---

[4] Approximately two months prior to defense counsel filing a motion to compel said evidence, our superior court held diagnoses, treatment records, and prescriptions were not "uniformly privileged" under Military Rule of Evidence [Mil. R. Evid.] 513. *United States v. Mellette*, 82 M.J. 374, 375 (C.A.A.F. 2022). We further note the holding in *Mellette* was already established in this court's jurisprudence. *See United States v. Rodriguez*, ARMY 20180138, 2019 CCA LEXIS 387, at *8–9 (Army Ct. Crim. App. 1 Oct. 2019) (mem. op) ("A list of . . . mental health 'problems' does not contain any 'confidential communications' . . . . Likewise, a list of prescription medications does not contain 'confidential communications' . . . .), pet. denied, 79 M.J. 430.

Defense counsel called Dr. ▮ to testify during an Article 39a session in support of the request for privileged communications. Defense counsel qualified Dr. ▮ as an expert forensic psychiatrist and had Dr. ▮ testify about bipolar disorder, depression, medications, and the potential for drug side-effects and substance abuse. Because defense counsel wanted production of AV1's and AV2's privileged mental health records, counsel also had Dr. ▮ testify about his ability to comprehensively assess a person's mental health without access to all the pertinent medical records. Dr. ▮ testified, "[a] diagnosis in and of itself doesn't provide a clinician like myself with a lot of information."

### C. The Military Judge Denies Appellant's Request(s)

The military judge denied appellant's request for an expert consultant after applying the three-part test articulated in *United States v. Gonzalez*, 39 M.J. 459, 461 (C.M.A. 1994), making detailed findings of fact concluding appellant failed to show expert assistance was necessary. The military judge noted defense counsel's desire to "explore all possibilities" was insufficient to establish necessity.

Additionally, the military judge found the defense request for an expert consultant "ambiguous" because the motion was "titled" as one to compel an expert *witness*, yet the requested relief only asked for an expert *consultant*. In light of the ambiguity, the military judge also denied defense an expert witness. The military judge found defense counsel did not submit sufficient detail for the court to evaluate three of the *Houser* factors, "whether an expert [was] needed . . . to understand the evidence, the reliability of that evidence, and whether its probative value [was] substantially outweighed by [Mil. R. Evid.] 403 dangers." *See generally United States v. Houser*, 36 M.J. 392, 397 (C.A.A.F. 1993).

Upon receipt of the military judge's denial of an expert witness and consultant, defense counsel submitted a motion to "Reconsider Denial of Motion [to] Compel Expert Witness Production." Defense counsel adopted the military judge's findings of fact from her previous ruling and acknowledged the prior motion to compel only "sought Dr. [▮]" as an expert consultant." Counsel then stated, "if [the] motion to reconsider [was] granted, the Defense would use Dr. [▮] as an expert witness." Contending that Dr. ▮ qualifications, the subject matter of Dr. ▮ testimony, the basis for his testimony, the reliability of the evidence, and Mil. R. Evid. 403 were not in dispute, defense counsel focused on the relevance of Dr. ▮ testimony. Defense counsel briefly discussed that AV1 and AV2 suffered from bipolar disorder and may have regretted their respective behaviors. Additionally, counsel contended AV1 and AV2 may have misperceived appellant's actions.

The military judge denied the defense's motion to reconsider the same day. In a single sentence she noted, "[t]he request for reconsideration is denied."

## LAW

We review a military judge's ruling to deny expert testimony for an abuse of discretion. *Id.* at 397–98 (citation omitted). "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (quotation and citation omitted). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (quoting *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004)).

To admit expert testimony a litigant must establish: (1) the expert's qualifications; (2) the subject matter of the proffered testimony; (3) the basis for the testimony; (4) the legal relevance of the evidence; (5) the reliability of the evidence; and (6) that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the members, undue delay, waste of time, or is needlessly cumulative evidence. *Houser*, 36 M.J. at 397 (citing Mil. R. Evid. 702, 703, 401, 402, 403; *United States v. Gipson*, 24 M.J. 246 (C.M.A. 1987)).

## DISCUSSION

The litigation and disposition of appellant's "expert" request is not a model worthy of emulation. Words have meaning, and throughout the litigation of this issue, the parties disregarded the words used. Consequently, we must determine what was presented and what was decided.[5]

As an initial matter, the court must again remind military justice practitioners that requests for expert consultants and expert witnesses are not the same. As this court adroitly stated in *United States v. Roberts*, "[a]lthough an expert consultant frequently morphs into an expert witness . . . like a caterpillar into a butterfly, [these] are separate roles controlled by distinct rules and legal tests." ARMY 20150023, 2019 CCA LEXIS 501, at *8 (Army Ct. Crim. App. 11 Dec. 2019) (mem. op. on further review) (citations omitted), *pet. denied*, 80 M.J. 143 (C.A.A.F. 2020); *accord United States v. Tinsley*, 81 M.J. 836, 840–41 (Army Ct. Crim. App. 2021), *pet. denied*, 82 M.J. 372 (C.A.A.F. 2022). Unfortunately, defense counsel injected ambiguity into his request when he mislabeled his motion to compel an expert

---

[5] Furthermore, when trial judges are confronted with an ambiguous motion for relief, they should seek clarification from counsel before issuing a ruling.

consultant as a motion to compel an expert witness, referenced "expert testimony," and a need for an "expert witness."[6]

We ultimately find no error in the military judge's adjudication of defense's request for an expert consultant. Defense counsel only requested the military judge compel production of an expert consultant. The law cited and relief requested made it clear the defense team sought an expert consultant, regardless of the incorrect caption on his motion.[7] Defense counsel's intent on this issue was solidified further in its "reconsideration" request when counsel directly stated the original motion was for an expert *consultant*. The military judge adequately analyzed and responded to counsel's request for an expert consultant.

The military judge complicated the litigation posture when she attempted to address a request that was not actually before her; the military judge addressed the defense motion as both one for a consultant and as one for a witness. However, her attempted resolution of counsel's phantom expert witness request was convoluted. Her struggle is understandable because she simply had nothing to review.

---

[6] Appellant's brief continues the ambiguity. Although Assignment of Error II is stylized as: "The Military Judge Abused Her Discretion By Denying Appellant's Motion For An Expert Witness," the case law cited in the assigned error includes legal authority for both expert consultants and witnesses. Appellant closes his discussion by noting his need for expert testimony. Though not specifically raised as an assignment of error by appellant, we conclude the military judge did not abuse her discretion when she denied appellant an expert consultant.

[7] When trial defense counsel used language consistent with a request for an expert witness, such language was combined with the legal standard or general phraseology of a request for an expert consultant. For instance, trial defense counsel claimed, "failure to provide expert testimony would *result in a fundamentally unfair trial*." (emphasis added). Accordingly, when referencing "expert testimony," trial defense counsel highlighted the legal burden of the accused to demonstrate an expert *consultant* was necessary for an adequate defense. *See Freeman*, 65 M.J. at 458 (noting an accused has the burden to show denial of an expert consultant "would result in a fundamentally unfair trial" (citation omitted)). Further, trial defense counsel's statements that he needed an "expert witness" to "prepare for trial," "explore necessary defense theories," and "perform independent analysis of key evidence" clarified counsel's desire for a member of the defense team to prepare for trial. Conversely, when trial defense counsel used precise language in his motion, his request for an expert consultant vice an expert witness was clear. Indeed, he opened his motion with, "[t]he Defense requests the Court order the Government to employ Dr. ███ as an expert consultant to the defense team in forensic psychiatry." He concluded his motion by specifically "request[ing] that the Court compel production of Dr. [███] as a defense team expert consultant."

Adding to the confusion, upon receipt of the military judge's dual denials, defense counsel requested "reconsideration" of the denial of an expert witness. However, defense counsel had not requested an expert witness. The military judge had preemptively ruled on an expert witness request instead of first resolving the ambiguity she identified in counsel's initial request.

After denying him a consultant and expert, appellant specified his desire for an expert witness. Accordingly, we now review the military judge's denial of an expert witness.

As an initial matter, we must determine what amount of deference we owe the military judge. Ultimately, we conclude it is less than what we otherwise might give to a military judge who makes sufficient findings of fact and rationally applies those facts to the applicable law. In this case, the military judge did both of those things in her initial ruling.[8]   If that were the end of the litigation, she would warrant full deference.

Unfortunately, she neglected to fully address appellant's reconsideration request in her denial.[9] In her initial ruling, the military judge posited defense counsel had failed to proffer how expert witness testimony would be relevant to the defense's theory. Subsequently, defense did proffer a theory in their reconsideration request. Because the military judge's reconsideration ruling failed to account for defense counsel's newly offered theory, the military judge is afforded some deference but not full deference.

The military judge did not abuse her discretion when she denied production of Dr. ▆▆▆ as an expert witness. The military judge's response to appellant's gossamer

---

[8] Accordingly, we do not find the military judge's findings of fact were clearly erroneous, nor were her application of the law to the facts unreasonable. Therefore, we focus on whether her "decision [was] influenced by an erroneous view of the law." *United States v. Anderson*, 68 M.J. 378, 383 (C.A.A.F. 2010) (citations omitted).

[9] Military judges are not always required to restate their factual findings or legal analysis after a party requests reconsideration of a ruling. However, in this case, defense counsel's first assertion of a basis for an expert *witness* followed the military judge's denial of an expert witness and created a temporal conundrum. Simply stated, the military judge denied something before counsel asked for it. Largely, the military judge's preemptive ruling was sound and remained so even in light of the defense counsel's attempted response to her earlier denial. However, the military judge did not revisit her analysis regarding the *Houser* factors or conduct a Mil. R. Evid. 403 balancing in light of the newly presented defense request and any new, plausible bases raised therein.

7

wisp of a request for an expert witness cited the appropriate law: *Houser*. In her ruling she focused on the fourth, fifth, and sixth *Houser* factors: legal relevance, reliability of the evidence, and whether the probative value of the evidence would outweigh the risk of prejudice, confusion of issues, etc. *See* 36 M.J. at 397. She highlighted the fact defense counsel had not articulated a case theory that expert testimony would help to advance. The military judge further noted the dearth of information in defense counsel's motion precluded her from being able to conducting a Mil. R. Evid. 403 analysis.

In his reconsideration request for an expert witness, defense counsel did not address these shortcomings identified by the military judge. Rather than specify a case theory, defense counsel merely referred to the military judge's findings of fact. Defense counsel's position appeared to be: because AV1 and AV2 had mental health diagnoses, it was axiomatic that the defense required an expert witness.[10] This is not the standard.

Defense counsel's proffer on reconsideration that Dr. ███ could have testified that individuals suffering bipolar disorder may engage in riskier behaviors during a manic episode and then may look back with regret afterward was not compelling. And, Dr. ███ testimony, by his own account, would not have been probative. Dr. ███ testified a forensic psychologist without access to a patient's mental health records could only testify generically. Defense counsel, in his attempt to pierce AV1's and AV2's psychotherapist privilege, had Dr. ███ discount the usefulness of his testimony if he did not have access to their records. Indeed, Dr. ███ noted "[a] diagnosis in and of itself doesn't provide a clinician like myself with a lot of information." Simply stated, Dr. ███ could not have testified whether AV1 or AV2 were or were not in a manic or depressed state when appellant assaulted them. Accordingly, the military judge's previous conclusion that appellant had not met the

---

[10] Trial defense and appellate defense counsel appear to conflate relevance for the purposes of discovery under Rule for Courts-Martial 703 and relevance for admissibility at trial. At both levels, counsel argue Dr. ███ testimony at the Article 39a session persuaded the military judge to permit discovery of AV1 and AV2s mental health diagnoses, treatment, and prescription records. Counsel contend—because Dr. ███ testimony caused the military judge to grant the defense access to certain records—he was therefore relevant and necessary as an expert witness. This assertion is unavailing. Dr. ███ testimony at the Article 39a session may have influenced the military judge to permit discovery of AV1's and AV2's mental health diagnoses, treatment, and prescription records. However, that the records were discoverable does not mean expert testimony was required at trial. *See United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004) ("[T]he discovery practice is not focused solely upon evidence known to be admissible at trial." (citations omitted)).

three *Houser* factors of legal relevance, reliability of the evidence, and Mil. R. Evid. 403 was not an abuse of discretion.

Addressing Mil. R. Evid. 403, the probative value of the proffered evidence was *de minimis*. Defense counsel argued AV1's and AV2's bipolar diagnoses may have caused them to have a "different perception of their behavior," or if in a manic state, may have "engaged in riskier behavior than they otherwise would engage in" and ultimately "look back on their behavior with regret." The probative value of this evidence is low because the case against appellant was about his actions in assaulting, suffocating, strangling, raping, and sexually assaulting his victims. AV1 and AV2 may certainly have looked back and regretted being physically dominated, but it was not their respective behaviors that caused their suffering. Consequently, appellant does not overcome a Mil. R. Evid. 403 balancing test. Moreover, as discussed above, at best, Dr. ▉ could only testify generically about the victims' mental health conditions and their effects. Such generic testimony would not have been probative of the crimes, to which appellant was charged and convicted.[11]

The military judge did not abuse her discretion when denying Dr. ▉ as an expert witness because the defense failed to show his testimony would have been relevant or necessary. The military judge's denial was within "the range of choices reasonably arising from the applicable facts and the law." *See United States v. Flesher*, 73 M.J. 303, 311 (C.A.A.F. 2014) (citation omitted) (articulating analysis for abuse of discretion).

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

---

[11] Even if the military judge abused her discretion, appellant does not demonstrate he suffered prejudice. The exclusion of Dr. ▉ possible testimony was harmless beyond a reasonable doubt. The panel heard appellant's admissions which corroborated much of AV1's and AV2's allegations. Given the low probative value and poor quality of the testimony Dr. ▉ could have provided, the exclusion of this testimony—assuming error—was harmless beyond a reasonable doubt. *See United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019) (observing "to obviate a finding of prejudice," a constitutional error must be found harmless beyond a reasonable doubt (citation omitted)). Because under the heightened constitutional standard appellant cannot demonstrate prejudice, we need not decide whether the exclusion of Dr. ▉ testimony was constitutional or nonconstitutional in dimension.

Senior Judge FLEMING and Judge COOPER concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court