# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2026-03**

————————————

**In re LB**
*Petitioner*


**Irvin BRYANT, Jr.**
Technical Sergeant (E-6), U.S. Air Force
*Real Party in Interest*

————————————

Review of Petition for Extraordinary Relief in the Nature of
a Writ of Mandamus

Decided 2 April 2026

————————————

*Military Judge*: Lauren M.D. Torczynski.

*For Petitioner*: Captain Alicia M. Ferguson, USAF; Devon A. R. Wells, Esquire.

*For Real Party in Interest*: Major Heather M. Bruha, USAF; Major Eric Trudung, USAF; Captain John M. Fredericks, USAF; Dwight H. Sullivan, Esquire.

*For United States*: Colonel G. Matt Osborn, USAF; Colonel Matthew D. Talcott, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and KUBLER, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge KEARLEY and Judge KUBLER joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

On 3 February 2026, pursuant to Article 6b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b, and Rule 19 of the Joint Rules of Appellate Procedure for Courts of Criminal Appeals, JT. CT. CRIM. APP. R. 19, Petitioner requested this court issue a writ of mandamus and stay of proceedings in the court-martial of *United States v. Technical Sergeant Irvin Bryant, Jr.* Technical Sergeant Bryant, the Real Party in Interest (RPI), is charged with several violations of Article 120, UCMJ, 10 U.S.C. § 920, and Article 128b, UCMJ, 10 U.S.C. § 928b.[1] Petitioner is the named victim in all specifications.

Petitioner requested this court issue an immediate stay of certain orders the military judge issued on 27 January 2026 directing two Air Force medical groups and two military medical treatment facilities (MTFs) to respond to interrogatories regarding the existence of certain records of Petitioner's "medical or mental health diagnoses, prescriptions, and/or treatment . . . ." Petitioner further requested this court vacate the military judge's orders. Petitioner also requested this court "join" this petition with *In re LB*, Misc. Dkt. No. 2025-14, a separate then-pending mandamus petition that Petitioner had previously filed in relation to the same court-martial.[2]

On 6 February 2026, this court issued an order denying the requested stay and the request to join this petition to *In re LB*, Misc. Dkt. No. 2025-14. This court granted the Government and the RPI leave to respond to the petition not later than 27 February 2026, and granted leave for Petitioner to file a reply brief thereafter. The RPI filed an answer on 18 February 2026, the Government filed its answer on 27 February 2026, and Petitioner filed a reply on 6 March 2026.[3]

Having considered the petition, the responsive briefs, Petitioner's reply brief, and the matters attached thereto, we deny the petition.

---

[1] References to the punitive articles are to the *Manual for Courts-Martial, United States* (2019 ed.). Unless otherwise noted, all other references to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2024 ed.).

[2] This court issued its opinion denying the separate mandamus petition on 19 March 2026. *In re LB*, Misc. Dkt. No. 2025-14, 2026 CCA LEXIS 139 (A.F. Ct. Crim. App. 19 Mar. 2026) (unpub. op.).

[3] On 6 March 2026, the RPI filed a motion to dismiss the petition on the grounds that it had become moot. Petitioner opposed the motion. This court denied the motion on 19 March 2026.

## I. BACKGROUND[4]

On 9 July 2025, a special trial counsel referred a total of three charges and six specifications alleging Appellant violated Articles 120 and 128b, UCMJ. Petitioner is the named victim in each specification.

On 15 September 2025, the RPI moved to compel discovery of non-privileged mental health records (*Mellette* records)[5] and certain privileged records of the Petitioner "in the possession of the Government to include" the 20th Medical Group (20 MDG) at Shaw Air Force Base (AFB), South Carolina, and the 316th Medical Group (316 MDG) at Joint Base (JB) Andrews, Maryland, as well as certain privileged mental health records. The RPI requested a closed hearing on its motion pursuant to Military Rule of Evidence (Mil. R. Evid.) 513(e)(2), and sought to compel Petitioner to testify at the hearing. The Government and Petitioner opposed the RPI's motion to compel discovery.

On 6 October 2025, a closed hearing took place, at which Petitioner testified. The military judge subsequently denied the RPI's motion to compel production.

On 15 December 2025, the RPI submitted a motion for reconsideration of its prior motion to compel discovery of Petitioner's mental health records. The Government and Petitioner opposed the motion for reconsideration.

After hearing argument from counsel, on 17 December 2025, the military judge granted the motion for reconsideration in part and denied it in part. The military judge found that additional discovery the Government had provided the Defense earlier in December 2025 "indicate[d] that [Petitioner] has seen various mental health and behavioral health providers over a period of time," although the times and locations were "not clear from the records provided." The military judge declined to compel production of requested privileged mental health records. However, the military judge granted the Defense's motion with respect to non-privileged *Mellette* records, finding "any such records" between 1 November 2020 and 30 October 2023 "at the 20 MDG, 316 MDG, [or two specific MTFs] are 'within the possession and control of military authorities,' and that the information is relevant to defense preparation." The military judge further ordered the parties to agree upon interrogatories to include in orders from the military judge to "each relevant treatment facility."

---

[4] The filings and record of the petition are partially sealed. This opinion touches on sealed material only to the extent necessary to address the issues before the court, and without modifying the sealed or unsealed status of any underlying material.

[5] *See generally United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022).

On 19 December 2025, Petitioner filed an "Objection to Erroneous Deposition and Disclosure of Records under [Mil. R. Evid.] 513." Petitioner contended: (1) the proposed interrogatories amounted to a written deposition without applying required criteria or procedures under Rule for Courts-Martial (R.C.M.) 702; and (2) Mil. R. Evid. 513(e)(4) prohibits disclosure of non-privileged mental health records unless one or more of the exceptions to the privilege set forth in Mil. R. Evid. 513(d) applies, and no such exception applied. On 8 January 2026, the military judge denied Petitioner's objection.

On 9 January 2026, Petitioner requested reconsideration of the military judge's denial of her 19 December 2025 objection. Petitioner contended: (1) the *Mellette* records were not relevant; (2) the military judge was not authorized to "create discoverable information" through the use of interrogatories; (3) the interrogatories were effectively written depositions, which required the Defense to identify individual witnesses to be questioned and the appointment of a deposition officer; and (4) the requested discovery was not constitutionally required.

On 27 January 2026, the military judge denied Petitioner's motion for reconsideration. On the same day, the military judge issued orders to the 20 MDG, 316 MDG, and two MTFs to respond to interrogatories regarding the existence and, if applicable, certain non-privileged contents of "records of [Petitioner's] medical or mental health diagnoses, prescriptions, and/or treatment . . . ." The orders directed the answers be addressed to trial counsel no later than 17 February 2026. The orders specified that "[t]o avoid the inadvertent disclosure of privileged mental health records (i.e., confidential communications), copies of actual medical or mental health records SHALL NOT be provided in response to this order."

## II. DISCUSSION

### A. Law

#### 1. Writ Petitions and Article 6b, UCMJ

The All Writs Act, 28 U.S.C. § 1651(a), grants a Court of Criminal Appeals (CCA) "authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005)). The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (citations omitted). In order to prevail on a petition for a writ of mandamus, the petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and

(3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004)); *see also H.V.Z. v. United States*, 85 M.J. 8, 12–13 (C.A.A.F. 2024) (confirming traditional mandamus standard of review applies to Article 6b(e), UCMJ, petitions). A writ of mandamus "is a 'drastic instrument which should be invoked only in truly extraordinary situations.'" *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983)).

Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), states:

> If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4), the victim may petition the [CCA] for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

Article 6b(e)(4), UCMJ, provides that this right to petition the CCA for a writ of mandamus applies with respect to protections afforded by, *inter alia*, Article 6b, UCMJ, and Mil. R. Evid. 513.

### 2. R.C.M. 701 Discovery

In general, disclosure to the defense of documents and data in the possession of military authorities is governed by Rule for Courts-Martial (R.C.M.) 701, whereas production to the defense of material not in the possession, custody, or control of military authorities is governed by R.C.M. 703. *See United States v. Bishop*, 76 M.J. 627, 634 (A.F. Ct. Crim. App. 2017). "Each party shall have adequate opportunity to prepare its case and equal opportunity to interview witnesses and inspect evidence . . . ." R.C.M. 701(e); *see also* 10 U.S.C. § 846(a) ("In a case referred for trial by court-martial, the trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."). "After service of charges, upon request of the defense, the Government shall permit the defense to inspect any . . . papers, documents, [or] data . . . if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation." R.C.M. 701(a)(2)(A)(i).

"The military judge may, consistent with [R.C.M. 701], specify the time, place, and manner of making discovery and may prescribe such terms and conditions as are just." R.C.M. 701(g)(1).

### 3. Mil. R. Evid. 513 Psychotherapist-Patient Privilege

Mil. R. Evid. 513(a) provides that, in general:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

In *United States v. Mellette*, the United States Court of Appeals for the Armed Forces (CAAF) held "[t]he phrase 'communication made between the patient and a psychotherapist' [in Mil. R. Evid. 513(a)] does not naturally include other evidence, such as routine medical records, that do not memorialize actual communications between the patient and the psychotherapist," and "that diagnoses and treatments contained within medical records [including mental health records] are not themselves uniformly privileged under [Mil. R. Evid.] 513." 82 M.J. 374, 375, 378 (C.A.A.F. 2022).

Mil. R. Evid. 513(d) enumerates seven exceptions to the psychotherapist-patient privilege.

Mil. R. Evid. 513(e) addresses the procedures required to determine the admissibility of patient records or communications. "Before ordering the production or admission of evidence of a patient's records or communication,[ ] the military judge must conduct a hearing, which shall be closed. . . . The patient must be afforded a reasonable opportunity to attend the hearing and be heard." Mil. R. Evid. 513(e)(2). "The military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." Mil. R. Evid. 513(e)(3). In *H.V.Z.*, the CAAF explained, *inter alia*, that Mil. R. Evid. 513(e)(2) provides a patient the right to be heard as to a motion to compel non-privileged as well as privileged mental health records, whereas the Mil. R. Evid. 513(e)(3) in camera review procedures apply only to protected (*i.e.*, privileged) records or communications. 85 M.J. at 15–17.

Mil. R. Evid. 513(e)(4) provides, "Any production or disclosure permitted by the military judge under this rule must be narrowly tailored to only the specific records or communications, or portions [thereof], that meet the requirements for one of the enumerated exceptions to the privilege under [Mil. R. Evid. 513(d)] . . . ."

**B. Analysis**

Petitioner contends the military judge clearly and indisputably erred in three respects: (1) by finding the information the Defense sought was relevant; (2) by ordering disclosure of non-privileged *Mellette* information without finding one of the Mil. R. Evid. 513(d) exceptions to the privilege applied; and (3) by "devising extra-jurisdictional compulsory process" consisting of

interrogatories "without adhering to the requirements and limitations of a deposition." In response, the RPI and Government contend the military judge did not clearly and indisputably err in any of these respects. We address each contention in turn.

### 1. Relevance

With respect to non-privileged mental health records, the military judge noted Petitioner had "indicated she had never seen any mental health professionals on base." However, the military judge found records subsequently provided to the Defense through discovery indicated Petitioner sought mental health counseling or treatment from on-base providers at two military installations, and may have sought treatment at two or three other military installations. The military judge rejected arguments by Petitioner and the Government that MTFs under the authority of the Defense Health Agency are not "military authorities" for purposes of R.C.M. 701. *See H.V.Z.*, 85 M.J. at 14 ("[W]e cannot say that the military judge clearly and indisputably erred by concluding that [an Air Force medical group] was a 'military authorit[y]' for the purposes of R.C.M. 701(a)(2)(A)."). The military judge then found any non-privileged mental health records at the facilities in question were "relevant to defense preparation."

Petitioner offers several reasons why the military judge clearly and indisputably erred in finding the *Mellette* information relevant. Petitioner contends the evidence before the military judge was "that [Petitioner] has not had therapy and has not received psychiatric diagnoses or medications." In addition, Petitioner further argues the record contains no information, and the Defense has not identified, what diagnoses or treatment Petitioner might have received that would be relevant. Further, to the extent the military judge found records provided in discovery contradicted Petitioner's motion testimony that she had not seen mental health professionals on base, Petitioner contends the "Defense cannot fabricate relevancy by calling a victim a 'liar' and then argue they are entitled to that victim's medical and mental health records **could** impact witness credibility."

The military judge's ruling cited an affidavit from the Defense's expert consultant in forensic psychology, which stated *inter alia* that Petitioner's medical records indicated she had received a "psychiatric diagnostic evaluation" and at least one 60-minute psychotherapy session. This appears facially inconsistent with Petitioner's statements during the motion hearing. In its response to the petition, the Defense notes the test for relevance under R.C.M. 701(a)(2)(A) is not ultimate admissibility at trial, but relevance to the defense's preparation for the court-martial. *See United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004) (holding evidence that is relevant to a witness's credibility may be "material to the preparation of the defense for purposes of the Government's

obligation to disclose under R.C.M. 701(a)(2)(A)"). Another military judge might have ruled differently; however, under the standard applicable to petitions for mandamus relief, we are not persuaded the military judge clearly and indisputably erred in finding the requested non-privileged information was relevant to the Defense's preparation.

### 2. Applicability of Mil. R. Evid. 513(e)(4)

Petitioner contends the military judge clearly and indisputably erred when she found Mil. R. Evid. 513(e)(4) did not apply to the non-privileged *Mellette* records at issue in this petition. As quoted above, Mil. R. Evid. 513(e)(4) requires that production or disclosure by the military judge must meet one of the enumerated exceptions stated in Mil. R. Evid. 513(d). In effect, Petitioner argues that *any* disclosure of mental health records or communications, including *non-privileged* information, requires an exception *to the privilege*.

At first blush, this would appear to be an extraordinary and unlikely proposition. However, Petitioner reaches this conclusion by applying the implications of the CAAF's opinion in *H.V.Z.* There, the CAAF held that Mil. R. Evid. 513(e)(2) requires a closed hearing, at which the patient has the opportunity to attend and be heard, whenever a party seeks a ruling on the production of mental health records, regardless of whether the requested records are privileged or not. *H.V.Z.*, 85 M.J. at 16. The CAAF distinguished this requirement for a closed hearing from Mil. R. Evid. 513(e)(3), which authorizes in camera review by the military judge under certain circumstances. The CAAF drew this distinction partly on the basis that Mil. R. Evid. 513(e)(3) specifically refers to "the production or admissibility of *protected* records or communications," whereas Mil. R. Evid. 513(e)(2) does not refer to "protected" material. *Id.* at 15. Petitioner notes Mil. R. Evid. 513(e)(4) applies to "[a]ny production or disclosure permitted by the military judge under" Mil. R. Evid. 513, without limiting its application to "protected" material. Therefore, Petitioner argues, Mil. R. Evid. 513(e)(4) is like Mil. R. Evid. 513(e)(2), and unlike Mil. R. Evid. 513(e)(3), in that it applies to *any* disclosure of mental health records or communications, whether privileged or not—presumably including "production or disclosure" of non-privileged material "permitted by the military judge" after holding the required closed hearing in accordance with Mil. R. Evid. 513(e)(2). Thus, Petitioner reasons, in light of *H.V.Z.*, the requirement to meet an enumerated exception to the privilege applies to non-privileged as well as privileged records and communications.

For their part, the Government and the RPI contend the military judge did not clearly and indisputably err in declining to apply Mil. R. Evid. 513(e)(4). Both parties cite our sister court's recent opinion in *R.C. v. Hynes*, 85 M.J. 678 (A. Ct. Crim. App. 2 Sep. 2025). Although the application of Mil. R. Evid. 513(e)(4) was not a focus in that case, in a footnote the United States Army

Court of Criminal Appeals (ACCA) rejected the application of Mil. R. Evid. 513(e)(4) to non-privileged material. *Id.* at 685 n.13 ("[T]here is no need to apply procedures involving an enumerated exception when no privilege existed for the information in the first place."). In addition, the RPI contends the plain meaning of the text of Mil. R. Evid. 513(e)(4) indicates it applies only to privileged material. The Government concludes that, at best (from Petitioner's perspective), the applicability of Mil. R. Evid. 513(e)(4) is unsettled at this point.

We are not persuaded the military judge clearly and indisputably erred. The CAAF's opinion in *H.V.Z.* did not directly address Mil. R. Evid. 513(e)(4). ACCA's opinion in *R.C. v. Hynes* provides some persuasive authority that the military judge's conclusion was correct. It seems improbable on its face that Mil. R. Evid. 513 would be written in such a way as to require *non-privileged* information to meet an exception to the *privilege* in order to be disclosed. Accordingly, we find Petitioner has failed to meet her burden as to this alleged error.[6]

### 3. Use of Interrogatories

As described above, the military judge issued orders directing the two medical groups and two MTFs to respond to "interrogatories." The recipients of the military judge's orders were directed to answer whether "records of [Petitioner's] medical or mental health diagnoses, prescriptions, and/or treatment exist within her military medical records." If so, the recipients were to provide additional information regarding, *inter alia*, the identity of behavioral or

---

[6] Nevertheless, we acknowledge tension between the language of Mil. R. Evid. 513, the CAAF's holding in *Mellette* that not all mental health communications and records are protected by the privilege, and the suggestion in *H.V.Z.* that subsections of Mil. R. Evid. 513(e) apply to non-privileged records or communications unless the modifier "protected" is used. In particular, we respectfully suggest our superior court readdress its conclusion in *H.V.Z.* when the occasion arises. *See United States v. Allbery*, 44 M.J. 226, 228 (C.A.A.F. 1996) (explaining a CCA may appropriately suggest "reconsideration of [the CAAF's] precedent"). *H.V.Z.* held the phrase "evidence of a patient's records or communications" referred to non-privileged as well as privileged material. 85 M.J. at 15. However, the opinion did not refer to Mil. R. Evid. 513(b)(5), which specifically defines "[e]vidence of a patient's records or communications" to mean "testimony of a psychotherapist, or assistant to the same, or patient records that pertain to *communications by a patient to a psychotherapist, or assistant to the same, for the purposes of diagnosis or treatment of the patient's mental or emotional condition*." (Emphasis added). Thus the phrase "evidence of a patient's records or communications" appears to be a term of art as used in Mil. R. Evid. 513 that refers to material "pertain[ing] to" privileged communications. Interpreting Mil. R. Evid. 513(e)(2) to apply specifically to privileged material, consistent with the Mil. R. Evid. 513(b)(5) definition, may alleviate the implication that Mil. R. Evid. 513(e)(4)'s requirement for an exception to the privilege applies to disclosures of non-privileged material.

mental health providers, the dates and types of mental health services provided, the categories of non-privileged mental health records maintained, mental health diagnoses, treatment plans, and medications. The military judge directed the recipients not to provide copies of actual medical or mental health records in response to the order.

Petitioner contends the military judge clearly and indisputably erred by using interrogatories to provide information regarding Petitioner's non-privileged mental health records to the Defense. Petitioner argues the military judge's orders were "tantamount to a written deposition," without applying the procedures for depositions set forth in R.C.M. 702. In particular, Petitioner cites, and emphasizes, the following from the Discussion of R.C.M. 702(a):

> A deposition is the out-of-court testimony of a witness under oath in response to questions by the parties, which is reduced to writing or recorded on videotape or audiotape or similar material. A deposition taken on oral examination is an oral deposition, and **a deposition taken on written interrogatories is a written deposition**. Written interrogatories are questions, prepared by the prosecution, defense, or both, which are reduced to writing before submission to a witness whose testimony is to be taken by deposition. The answers, reduced to writing and properly sworn to, constitute the deposition testimony of the witness.

Petitioner further notes that according to R.C.M. 702(a), the general purpose of a deposition is to, at the request of a party, preserve for trial the testimony of a witness where exceptional circumstances indicate it is in the interest of justice to do so. In contrast, Petitioner contends, the military judge is improperly using the interrogatories to "manufacture" documents in order to facilitate discovery. Petitioner objects that R.C.M. 701(a)(2) provides for inspection of material that already exists, and military judges lack authority to direct the creation of documents for discovery.

We are not persuaded the military judge clearly and indisputably erred by issuing the interrogatories. R.C.M. 701(g)(1) provides military judges broad authority to, "consistent with [R.C.M. 701], specify the time, place, and manner of making discovery and may prescribe such terms and conditions as are just." As described above, the military judge determined non-privileged information about Petitioner's mental health that was relevant to the preparation of the Defense was in the possession of military authorities. In order to facilitate the provision of relevant information and limit the risk of unauthorized disclosure of privileged or other protected information, the military judge regulated the "time, place, and manner of making discovery" through the use of targeted interrogatories. In doing so, the military judge referred to Chief Judge Ohlson's

concurring opinion in *B.M. v. United States*, wherein the Chief Judge suggested military judges could "pose *interrogatories* to the psychotherapist that are *narrowly tailored to elicit information only about the victim's diagnoses, medications, and treatments.*" 84 M.J. 314, 323 (C.A.A.F. 2024) (Ohlson, C.J., concurring) (emphasis added). While we agree with Petitioner that a suggestion by one CAAF judge in a concurring opinion is not binding precedent that, in itself, authorizes the use of interrogatories to elicit *Mellette* information, we find Chief Judge Ohlson's opinion is some indication that following his recommended course of action is not a clear and indisputable error.

As to Petitioner's argument the military judge ordered a de facto written deposition, we are not persuaded. A fair reading of the quoted portion of the Discussion of R.C.M. 702(a) is simply that depositions may be oral, or they may be in writing through the use of interrogatories, along with a description of what interrogatories are *in the context of a deposition*. Petitioner has not cited any provision of law that forbids the use of interrogatories in other contexts. Given the broad authority for military judges to regulate discovery under R.C.M. 701(g)(1), and in light of Chief Judge Ohlson's indorsement of this method, we agree with the RPI and the Government that Petitioner has failed to meet her burden to demonstrate the military judge clearly and indisputably erred in the use of interrogatories.

## III. CONCLUSION

Petitioner's petition for extraordinary relief in the nature of a writ of mandamus is **DENIED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court